J-S22017-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: E.K.C., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: K.R.I.R, MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 273 MDA 2025 |

Appeal from the Decree Entered February 3, 2025
In the Court of Common Pleas of Dauphin County Orphans' Court at
No(s):  140-AD-2024

BEFORE:   LAZARUS, P.J., BOWES, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BOWES, J.:                **FILED: SEPTEMBER 4, 2025**

K.R.I.R. ("Mother") appeals from the decree entered on February 3, 2025, involuntarily terminating her parental rights as to E.K.C., born in September 2022.[1]  Mother's counsel, Lisa M. Watson, Esquire, has filed an application to withdraw and a brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).  We affirm the decree terminating Mother's parental rights and grant counsel's application to withdraw.

The orphans' court summarized the background of this matter thusly:

> Dauphin County Children and Youth Services ("the Agency") became involved with Mother and E.K.C. in 202[1] due to concerns

---

[*] Former Justice specially assigned to the Superior Court.

[1] The orphans' court on the same day also terminated by consent the parental rights of E.K.C.'s father, E.C.-S. ("Father").  Father has not appealed that determination.

of Mother's housing and alcohol use. E.K.C. was adjudicated dependent on November 24, 2021, and placed under the court-ordered protective supervision of Mother. At that time, Mother resided with maternal grandmother. Soon thereafter, and while the child was under Mother's court-ordered protective supervision, Father brought the child to the hospital stating that Mother and maternal grandmother were neglecting the child. After Mother and maternal grandmother arrived at the hospital visibly intoxicated, the Agency attempted a safety plan, but the parties could not come to an agreement. On March 3, 2022, the Agency conducted a shelter hearing for E.K.C., which resulted in the child being removed from Mother's court-ordered protective supervision and placed in formal foster case. Since then, the Agency has had ten . . . permanency review hearings for E.K.C. On September 21, 2023, the Agency sought and was granted aggravated circumstances against Mother due to her failure to maintain substantial contact with E.K.C. for a period in excess of six months, relieving the Agency of reasonable efforts.

Orphans' Court Opinion, 3/27/25, at unnumbered 1-2 (some capitalization altered).

From the time of E.K.C.'s dependency, Mother was tasked with making progress as to ten distinct services objectives: (1) cooperate and comply with the Agency; (2) follow through with a drug and alcohol evaluation; (3) complete a psychological evaluation and follow all recommendations; (4) obtain stable housing; (5) maintain legal employment; (6) ensure that E.K.C. was medically up to date; (7) abide by any services implemented by the Agency; (8) attend all court hearings and treatment plan meetings; (9) sign all releases of information pertaining to E.K.C.; and (10) notify the Agency of any changes in residence or contact information within twenty-four hours. Mother's compliance was minimal or wholly lacking as to the vast majority of these objectives. For example, she did not attend child wellness appointments

for E.K.C. or otherwise ensure he was medically up to date, participate in parenting or other programs recommended by the Agency, maintain a stable residence, or provide proof that she was regularly employed.

While E.K.C. was in foster care between March 2022 and May 2024, Mother would only visit sporadically and frequently would go several months without communicating with the Agency. On May 30, 2024, E.K.C. was placed in the pre-adoptive home of a paternal aunt in North Carolina. The foster family made weekly virtual calls available to Mother, but she often failed to participate.

Accordingly, the Agency filed the underlying petition seeking termination of Mother's parental rights on December 11, 2024. The termination hearing was held on February 5, 2025.[2] Mother appeared and was represented by counsel. The Agency proffered testimony as to the above facts. Additionally, case worker Samantha Weirich testified that E.K.C. was doing "amazing" with his foster family and has bonded with them, relying upon them to meet his needs. *See* N.T. Hearing, 2/5/25, at 22. Particularly, E.K.C.'s paternal aunt has kept E.K.C. medically up to date and engaged in services to address special needs arising from his diagnosis of autism spectrum disorder.

---

[2] The orphans' court appointed Joy Waters Fleming, Esquire, as guardian *ad litem* ("GAL") and legal counsel for E.K.C., finding no conflict between the legal interest and best interest of the two-and-one-half-year-old child.

Mother testified in her defense. She indicated that approximately four months before the date of the hearing, she began residing in a "Mommy and Me" program at a Gaudenzia rehabilitation facility with her nine-month-old daughter.[3] She had recently begun to participate in parenting and behavioral therapy programs offered therein. Mother acknowledged that she lacked stable housing and employment, but indicated that her plans were to attend a step-down facility with the hope that assistance could be provided for her to achieve stability. Overall, Mother expressed her love for E.K.C. and regretted her lack of responsibility as a parent.

Following the hearing, the orphans' court entered a decree terminating Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b). Mother filed a timely notice of appeal and concise statement of errors pursuant to Pa.R.A.P. 1925(a)(2)(i). The orphans' court authored an opinion discussing the evidence supporting its decision to terminate Mother's parental rights.

In this Court, Mother's counsel filed both an **Anders** brief and a petition to withdraw as counsel, which we must first consider before addressing the underlying merits. **See In re Adoption of B.G.S.**, 240 A.3d 658, 661 (Pa.Super. 2020) ("When faced with a purported **Anders** brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw." (cleaned up)).

---

[3] That child is not implicated in these proceedings.

In order to successfully withdraw pursuant to **Anders**, counsel must: (1) petition the court for leave to withdraw and aver that, after making a conscientious examination of the record, she has determined that an appeal would be frivolous; (2) furnish a copy of the **Anders** brief to the appellant; and (3) advise the appellant that they have the right to immediately retain private counsel or bring additional arguments to the court's attention. **Id**. To confirm client notification has occurred, counsel must provide a copy of the letter advising the appellant of their rights in conformity with **Commonwealth v. Millisock**, 873 A.2d 748, 752 (Pa.Super. 2005). **See B.G.S.**, 240 A.3d at 661.

Our High Court further delineated counsel's duties as follows:

> [I]n the **Anders** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Santiago**, 978 A.2d at 361.

Based upon our examination of the petition to withdraw and **Anders** brief, we conclude that counsel has complied with the technical requirements set forth above. As required by **Santiago**, counsel presented a history of the case, referred to issues that arguably support the appeal, stated her conclusion that the appeal is frivolous, and cited case law. **See Anders** brief

- 5 -

at 6-21. Counsel also sent Mother the petition and brief, along with a letter apprising Mother of her immediate right to obtain counsel or proceed *pro se*. Mother has not availed herself of that opportunity. We must therefore "'make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous.'" ***Commonwealth v. Flowers***, 113 A.3d 1246, 1249 (Pa.Super. 2015) (quoting ***Santiago***, 978 A.2d at 354 n.5).

The ***Anders*** brief identifies the following claims:

1. Whether the [orphans'] court erred as a matter of law concluding that the Agency met its burden of proving, by clear and convincing evidence, that Mother refused or failed to perform parental duties [f]or a period of at least six months prior to the filing of the petition seeking the involuntary termination of her parental rights pursuant to 23 Pa.C.S. § 2511(a)(1).

2. Whether the [orphans'] court erred as a matter of law concluding that Mother had failed, refused, or was incapable of remedying the conditions which led to the removal of the child, and therefore the termination of parental rights best serves the needs and welfare of the child pursuant to 23 Pa.C.S. § (a)(2), (a)(5), and (a)(8).

3. Whether the [orphans'] court properly considered the developmental, physical, and emotional needs and welfare of the child when issuing a decree involuntarily terminating the parental rights of Mother, pursuant to 23 Pa.C.S. § 2511(b).

***Anders*** brief at 4-5 (cleaned up).

As all three of the potential claims identified in the ***Anders*** brief pertain to whether the evidence was sufficient to support the court's decree terminating Mother's parental rights, we examine them together. We begin with the legal principles governing our review of such appeals:

In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. This standard of review corresponds to the standard employed in dependency cases, and requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but it does not require the appellate court to accept the lower court's inferences or conclusions of law. That is, if the factual findings are supported, we must determine whether the trial court made an error of law or abused its discretion. An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion; we reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill will. Thus, absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. However, we must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re Adoption of C.M.*, 255 A.3d 343, 358–59 (Pa. 2021) (cleaned up).

"The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G. & J.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted). Further, "if competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

Section 2511 of the Adoption Act sets forth the following two-part analysis:

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence

that the parent's conduct satisfies the statutory grounds for termination delineated in [§] 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [§] 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re Adoption of B.G.S.*, 245 A.3d 700, 705 (Pa.Super. 2021) (cleaned up).

We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*) (cleaned up).

To affirm a termination decree, we need only agree with the orphans' court that any one subsection of § 2511(a), as well as § 2511(b), is met. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). As it pertains to the case *sub judice*, we consider § 2511(a)(1) and (b), which provide as follows in relevant part:

**(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

. . . .

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings,

- 8 -

income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), . . . the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

Our Supreme Court has offered authoritative guidance on the inquiry central to termination pursuant to § 2511(a)(1):

Parental duties are not defined in the Adoption Act, but our courts long have interpreted parental duties in relation to the needs of a child, such as love, protection, guidance[,] and support.  Parental duties are carried out through affirmative actions that develop and maintain the parent-child relationship.  The roster of such positive actions undoubtedly includes communication and association.  The performance of parental duties requires that a parent exert himself to take and maintain a place of importance in the child's life.  Fortitude is required, as a parent must act with reasonable firmness to overcome obstacles that stand in the way of preserving a parent-child relationship and may not wait for a more suitable time to perform parental responsibilities.

*In re Adoption of L.A.K.*, 265 A.3d 580, 592 (Pa. 2021) (cleaned up).

Although our General Assembly emphasized "the six months immediately preceding the filing of the termination petition" as the "most critical period for evaluation[,]" the High Court cautioned that courts should "avoid a mechanical application of the law regarding the termination of parental rights." *Id*. at 592-93.  Rather, the review conducted by the orphans' court should encompass the "whole history of a given case." *In re Adoption of C.M.*, 255 A.3d at 364.  Moreover, every assessment of § 2511(a)(1) "must examine the individual circumstances and any explanation offered by the

parent to determine if that evidence, in light of the totality of the circumstances, clearly warrants permitting the involuntary termination of parental rights." *In re Adoption of L.A.K.*, 265 A.3d at 593. These factors include, among other things: (1) the parent's explanation for her conduct; (2) post-abandonment contact and efforts to re-engage with the child; and (3) the effect on the child of terminating the parent's rights pursuant to § 2511(b). *Id*.

In discussing the sufficiency of the evidence within the *Anders* brief as to § 2511(a)(1), counsel notes as follows:

> An analysis of the six . . . month period prior to the filing of the Agency's petition for involuntary termination of Mother's parental rights indicates Mother did not begin to make sustained, affirmative efforts toward exercising her parental rights until [she began attending Gaudenzia] on or about October 11, 2024—a mere two . . . months prior to the filing of the petition giving rise to the instant appeal.

*Anders* brief at 19. She further highlights that in viewing the totality of the case, Mother did not make any significant effort toward reunification until nearly three years after the child's placement. *Id*. Counsel recognized the praise the orphans' court gave to Mother for her recent progress toward rehabilitation, but noted the legal authority that "parental rights simply cannot be preserved by waiting for a more suitable time to perform one's parental responsibilities." *Id*.

In its opinion, the orphans' court likewise held: "Mother's sporadic contact with the child and history of visits fail to demonstrate a commitment

to parenting E.K.C. The Agency referred Mother to various parenting and visitation services, such as JusticeWorks STOPP, the Samara House Parenting, and the YWCA, all of which Mother failed to follow through." Orphans' Court Opinion, 3/27/25, at unnumbered 10. It further concluded that Mother left the child without parental control or care for an unreasonable amount of time, opining as follows:

> While the record includes evidence of very recent instances of minimal progress, this insubstantial progress occurred after the Agency received aggravated circumstances against Mother, and after the child had been in the care and custody of the Agency for nearly three years. E.K.C. is innocent, and deserves a mother who consistently works on h[is] goals and unfailingly provides the love and care he deserves.

*Id*. at unnumbered 11 (some capitalization altered).

Upon review, we agree that any challenge to the sufficiency of the Agency's proof as to § 2511(a)(1) would necessarily fail, as the uncontested evidence demonstrated that Mother had not performed any parental duties in the six-month period leading up to the filing of the termination petition. She had nearly no communication with E.K.C. or the Agency during that time, was not involved in E.K.C.'s medical care, lacked stabile housing and monetary resources to care for the child, and otherwise did not "exert [herself] to take and maintain a place of importance in" E.K.C.'s life. *See In re Adoption of L.A.K.*, 265 A.3d at 592. Despite Mother making minimal progress on her rehabilitative goals in the months leading up to the termination hearing, there was no record evidence that Mother fulfilled any parental duties during the

critical period contemplated by § 2511(a)(1). In sum, the certified record upholds the court's determination.

Having found statutory support for termination under subsection (a), we now pivot to § 2511(b), which is reviewed from the child's perspective. *See Matter of Adoption of L.C.J.W.*, 311 A.3d 41, 51 (Pa.Super. 2024). In conducting a § 2511(b) analysis, the court must place the child's "developmental, physical, and emotional needs and welfare above concerns for the parent. Accordingly, the determination of the child's particular developmental, physical, and emotional needs and welfare must be made on a case-by-case basis." *Id*. (cleaned up). Those emotional needs "include intangibles such as love, comfort, security, and stability." *Id*. at 52 (cleaned up). "[I]f the child has any bond with the biological parent, the court must conduct an analysis of that bond, which is not always an easy task." *Id*. (cleaned up). Finally, this Court "must keep the ticking clock of childhood ever in mind" and we "will not disturb [the court's bonding] assessment when [its] factual findings are supported by the record." *Matter of Adoption of L.C.J.W.*, 311 A.3d at 52 (cleaned up).

In the *Anders* brief, counsel discusses subsection (b) by noting that Mother cannot point to any record evidence demonstrating that E.K.C. had a beneficial, necessary bond with her, whether caused by "geographical constraints or the passing of time." *Anders* brief at 20. In a similar vein, the orphans' court addressed this prong as follows:

[There was no evidence presented] that a bond exists [between Mother and E.K.C.] which, if broken, will cause detriment to E.K.C. E.K.C. has resided in foster care since February 2023. His new kinship foster home is a pre-adoptive home that ensures E.K.C.'s needs for love, safety[,] and stability are met. E.K.C. enjoys his time with his family, is in a specialized school that can address his autistic needs, has bonded with his foster family and his best interests are served in that home. The caseworker testified that he is doing "amazing" and in her nearly three-year involvement with this case, he is currently the best she has ever seen him.

We will not disrupt the permanency and stability E.K.C. enjoys based upon the hope that Mother can finally acquire stable housing and employment, and maintain the necessary sobriety and commitment to properly parent.

Orphans' Court Opinion, 3/27/25, at unnumbered 13.

Again, we find that the Agency's evidence with respect to subsection (b) renders any challenge to the sufficiency of the evidence wholly without merit. The orphans' court's findings of a bond between E.K.C. and the foster family are amply supported by the record. Conversely, there was no evidence of any existing bond between Mother and E.K.C., or that termination would detriment E.K.C.'s wellbeing. In other words, nothing supports the contention that by terminating Mother's parental rights, the court was not giving "primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b).

Having addressed the issues raised in the **Anders** brief, we lastly determine that our "simple review of the record to ascertain if there appear[s] on its face to be arguably meritorious issues that counsel, intentionally or not, missed or misstated[,]" has revealed no additional issues that counsel failed

to address. *See Commonwealth v. Dempster*, 187 A.3d 266, 272 (Pa.Super. 2018) (*en banc*). Therefore, we affirm the decree terminating Mother's parental rights and we grant counsel's petition to withdraw.

Application of Lisa M. Watson, Esquire, to withdraw as counsel is granted. Decree affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 09/04/2025